**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| MICHAEL M. MOSES, )<br>         Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES STEEL CORPORATION, )<br>         Defendant. ) | CAUSE NO. 2:11-CV-385-PRC |

**OPINION AND ORDER**

This matter is before the Court on United States Steel Corporation's Motion for Summary Judgment [DE 27], filed by Defendant United States Steel Corporation ("U.S. Steel") on November 29, 2012. For the reasons set forth in this Opinion and Order, the Court grants the motion.

**PROCEDURAL BACKGROUND**

**A. EEOC Charge 24E-2010-00219 – Disability Discrimination**

Prior to the institution of this lawsuit, Michael M. Moses filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") numbered 24E-2010-00219 ("Charge 2010-219"). Charge 2010-219 was signed by Moses on September 9, 2010, and it is stamped as received by the EEOC on September 13, 2010. In this charge, Moses asserted that U.S. Steel discriminated against him based upon his disability and that the discriminatory acts took place from August 12, 2010, through August 19, 2010. Moses explained that he received a replacement payroll check on July 23, 2010, which he cashed that same day. He also explained that, when the original payroll check arrived the next day, he cashed that check, too, but did not inform U.S. Steel of his "misappropriation." Def. Br., Exh. B.

In Charge 2010-219, Moses indicated that he was suspended by U.S. Steel on August 12, 2010, and that, on August 19, 2010, the suspension was converted to a discharge. He represented that the reason given for his suspension and discharge was his violation of the "Replacement Check Agreement." *Id.* Moses asserted in the charge that he had an addiction that constitutes a disability. He further charged that, although U.S. Steel has a rehabilitation program for employees with

addictions, U.S. Steel did not consider his addiction to be a disability and denied him his "right to recovery" in violation of the Americans with Disability Act ("ADA"). Def. Br., Exh. B.

The EEOC was unable to conclude that there was a violation of the applicable statutes based on this charge. On September 29, 2010, the EEOC mailed Moses a right-to-sue notice for charge number 2010-219 (hereinafter referred to a "first notice of right to sue") indicating that he had 90 days from the receipt of the letter to file a lawsuit.

### B. EEOC Charge 24E-2011-00114 – Race Discrimination

Moses filed a second Charge of Discrimination with the EEOC numbered 24E-2011-00114 ("Charge 2011-114"). The charge was signed by Moses on March 15, 2011, and it is stamped as received by the EEOC on March 18, 2011. In this charge, Moses alleged that U.S. Steel discriminated against him based upon his race and that the discriminatory acts took place from August 12, 2010, through August 19, 2010. He explained that he fell victim to alcohol abuse and, as a result, [ ] violated company policy while under the influence of alcohol." He then entered the company's "Employee Assistance Program" to get help. Def. Br., Exh. C.

Moses indicated that he was suspended by U.S. Steel on August 12, 2010, and that the suspension was converted to a discharge on August 19, 2010. According to Moses, U.S. Steel's Labor Relations Department Manager, Timothy Mosby, who is Caucasian, suspended and terminated him for three reasons: (1) improper receipt of check, (2) theft, and (3) violation of "Replacement Check Agreement." Def. Br., Exh. C. Moses claimed that he was treated less favorably than three other employees who are Caucasian or Hispanic and who had violated similar policies.

The EEOC was unable to conclude that there was a violation of the applicable statutes based on this charge. On June 27, 2011, the EEOC mailed Moses a right-to-sue notice for charge number 2011-114 (hereinafter referred to as "second notice of right to sue") indicating that he had 90 days from the receipt of the letter to file a lawsuit.

## C. Federal Court Proceedings

On October 24, 2011, Moses filed with this Court an Employment Discrimination Complaint against U.S. Steel, alleging that U.S. Steel and Samuel Downs violated the American with Disabilities Act, 42 U.S.C. § 12101. Moses alleges that he is "an American with disabilities" and that "alcohol and gambling are [his] vices." Compl. He further alleges that, when U.S. Steel learned of his disabilities, he was discriminated against by the company and its representative, Samuel Downs. Moses alleges that U.S. Steel has supported the rehabilitation of other employees with the same disabilities and that those individuals have not been terminated.

In his Complaint, Moses indicates that he filed a charge of discrimination with the EEOC; however, he did not attach a copy of the charge to the Complaint. Nevertheless, Moses did attach to the Complaint a copy of the second notice of right to sue dated June 27, 2011. He does not indicate in the Complaint when he received the notice of right to sue.

On January 18, 2012, U.S. Steel filed a Motion to Dismiss. On March 28, 2012, the Court granted in part and denied in part the Motion to Dismiss, dismissing the claims against Defendant Samuel Downs. The Court also found that "Moses cannot satisfy the administrative prerequisites to suit based on [his] second charge of discrimination because the claim for relief under the ADA in his Complaint does not relate to the same facts or to the same theory of liability alleged in the second charge of discrimination based on race . . . ." Mar. 28, 2012 Order, p. 8-9. Thus, the Court held that this lawsuit cannot be predicated on Moses' second charge, Charge 2011-144, based on race discrimination. *Id*. at 9.

On November 11, 2012, U.S. Steel filed the instant Motion for Summary Judgment, a brief in support, and an appendix of exhibits. U.S. Steel also sent a Notice to Pro Se Litigant, advising Moses of the consequences of failing to respond to the Motion for Summary Judgment. On February 21, 2013, Moses filed a response, and U.S. Steel filed a reply on February 25, 2013.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254,

4

1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

# FACTUAL BACKGROUND

## A. Service of Discovery

On September 13, 2012, U.S. Steel timely served on Moses a set of Interrogatories, a Request for Production of Documents, and a Request for Admissions. In addition, U.S. Steel sent Moses HIPAA medical authorizations, which would allow U.S. Steel to obtain Moses' medical records from any of his health care providers. The Interrogatories, Request for Production of Documents, Request for Admissions, and HIPAA authorizations were sent to Moses by Certified Mail on September 13, 2012. Moses signed the Certified Mail receipt for the above documents on September 18, 2012.

The correspondence that accompanied the discovery requests provided Moses with complete copies of Federal Rules of Civil Procedure 33, 34, and 36. Counsel for U.S. Steel also wrote, "Please be advised that absent any extension of time issued by the Court, your responses are due within thirty (30) days. Your failure to timely respond to the Request for Admissions shall result in all of the Requests being deemed admitted as a matter of law." Def. Br., Exh. K ¶ 1.

Moses' responses to U.S. Steel's Request for Admissions and other discovery requests were due on or before October 18, 2012. Moses never sought an extension to respond to U.S. Steel's Request for Admissions. Moses never responded to the Request for Admissions or any of the other discovery requests.

This was U.S. Steel's second request for HIPAA authorizations. U.S. Steel sent its first request for a HIPAA medical authorization on June 7, 2012, along with its Initial Disclosures. Moses never returned the HIPAA authorizations to U.S. Steel.

## B. Admissions

Through the discovery process, Moses has admitted the following facts as true due to his failure to answer or respond to U.S. Steel's Request for Admissions:

Request # 1.  Moses did not receive his paycheck (for the pay period ending July 10, 2010), within the normal time frame, in the mail at his new residence.

Request # 2.  Moses went to the U.S. Steel paymaster/payroll office on or about July 21, 2010 and requested a replacement check.

Request # 3.  When Moses received a replacement check, he signed a Replacement Check Agreement that required him not to cash the original payroll check in exchange for receiving the replacement check and he agreed to return the original check immediately upon receipt.

Request # 4.  The Replacement Check Agreement included a notification that he would be subject to discipline, including termination, for failure to abide by the terms of the Agreement.

Request # 5.  On or about July 23, 2010, Moses received a replacement payroll check.

Request # 6.  Moses cashed the replacement check.

Request # 7.  On or about July 24, 2010, Moses received the original payroll check.

Request # 8.  Moses cashed the original payroll check.

Request # 9.  Moses did not report that he received and cashed the original payroll check to anyone at U.S. Steel prior to being contacted by a representative from the U.S. Steel Payroll Department on or about August 12, 2010.

Request # 10.  Moses was terminated from U.S. Steel in August 2010 for improper receipt of pay, theft, and violation of the Replacement Check Agreement.

Request # 11.  Prior to his 9B grievance hearing regarding the above infractions Moses had not informed any management employee at U. S. Steel that he had an alcohol problem.

Request # 12.  When Moses reported to the U.S. Steel Employee Assistance Program ("EAP") in July 2010, he only sought treatment for gambling.

Request # 13.  Moses has no evidence, medical or otherwise, to establish that he had any physical or mental impairments prior to cashing the replacement and original payroll checks in July 2010.

Request # 14.  On or before July 25, 2011, Moses received the Right to Sue Notice from the EEOC (dated September 29, 2010) for Charge of Discrimination #24E-2010-219.

Request # 15.  From September 29, 2010 to July 25, 2011 Moses did not experience any extraordinary circumstances which would have prevented him from filing a lawsuit against U.S. Steel for disability discrimination.

Request # 16.  Moses does not know of any other employees who were not fired after violating the Replacement Check Agreement.

Request # 17.  Moses does not have a physical or mental impairment that substantially limits a major life activity.

Request # 18.  Moses was terminated for cause from U.S. Steel.

Request # 19.  Moses was not terminated due to any alleged disability.

## ANALYSIS

In his Employment Discrimination Complaint, Moses alleges that U.S. Steel violated his rights under the Americans with Disabilities Act ("ADA"), stemming from the allegations in Charge 2010-219.  U.S. Steel seeks a grant of summary judgment in its favor on Moses' remaining claims on the basis that the Complaint was not timely filed.  In addition, U.S. Steel asserts that Moses cannot demonstrate essential elements of his claim under the ADA.

### A.  Request for Admissions

Federal Rule of Civil Procedure 36(a)(3) provides that "[a] matter is admitted unless within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3).  "Rule 36(a) is self-executing, meaning

that no court intervention is necessary for an admission to be established, and failure to timely respond results in the admission of the matters raised in a request for admissions." *Hardwick v. John and Mary E. Kirby Hosp.*, No. 10-CV-2149, 2011 WL 4433764, * 2 (N.D. Ill. Sept. 22, 2011). While the failure to respond to a request for admission may deprive a party of the opportunity to contest the merits of the case, the result is the orderly disposition of the case. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).

Although the Court is aware that pro se litigants face unique challenges, it is generally recognized that procedural rules must be complied with in order to promote an interest in the uniform administration of justice. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). To ensure fairness, "rules apply to uncounseled litigants and must be enforced." *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998).

In this case, counsel for U.S. Steel specifically notified Moses of his obligation to respond to the Request for Admissions by stating, "Your failure to timely respond to the Request for Admissions shall result in all of the Requests being deemed admitted as a matter of law." Counsel for U.S. Steel also provided Moses with a complete copy of Federal Rule of Civil Procedure 36. Nonetheless, Moses neither asked for an extension of time nor gave any response to U.S. Steel's Request for Admissions within the specified time period or any time thereafter. Thus, because Moses did not answer the Request for Admissions within the time period specified, the matters therein are deemed admitted and are "conclusively established" for purposes of this litigation Fed. R. Civ. P. 36(b).

Under Rule 36, default admissions may serve as the factual foundation for summary judgment. *Kasuboski*, 834 F.2d at 1350; *see also McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003). Summary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment. *Kasuboski*, 834 F.2d

at 1350. However, the Court must determine whether summary judgment is appropriate under all the undisputed material facts. Fed. R. Civ. P. 56. Therefore, the Court now takes the admitted facts as true for purposes of summary judgment and turns to the legal arguments before the Court.

### B. Timeliness

Moses failed to satisfy the prerequisite to a Tile VII/ADA lawsuit by failing to file his lawsuit within 90 days of having received the applicable right-to-sue letter from the EEOC. Both Title VII and the ADA require a plaintiff to file a civil action within 90 days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a) (adopting the charge-filing requirements and enforcement mechanism of Title VII in ADA cases). The receipt of a right-to-sue notice by a claimant or his attorney starts the 90-day period within which a plaintiff has to file a cause of action under Title VII or the ADA. *Threadgill v. Moore, U.S.A. Inc.*, 269 F.3d 848, 849-50 (7th Cir. 2001). A right-to-sue letter from the EEOC is a prerequisite to bringing suit, and the right-to-sue letter that forms the basis for a plaintiff's complaint must relate to the facts alleged before the EEOC. *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005).

The 90-day period of limitations set forth in 42 U.S.C. § 2000e-5(f)(1) begins to run on the date that the EEOC's right-to-sue notice is actually received by the claimant. Equitable tolling may excuse an untimely filing if a plaintiff exercised due diligence, yet could not have discovered all of the information needed to file his claim on time. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). However, the doctrine of equitable tolling is to be used sparingly and is limited to situations in which extraordinary circumstances prevented a party from filing on time. *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *Bensman v. U.S. Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005) (citing *Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002)).

In this case, the EEOC mailed Moses a right-to-sue notice for Charge 2010-219 on September 29, 2010. The notice indicated that Moses had 90 days from the receipt of the letter to file a lawsuit. Moses filed his lawsuit on October 24, 2011, which is 390 days after the notice was

mailed. Through his admissions under Rule 36, Moses admitted that he received this right-to-sue notice on or before July 25, 2011. Using July 25, 2011 as the latest possible day that Moses received the right-to-sue notice for Charge 2010-219 from the EEOC, Moses' Complaint is untimely, as it was filed 91 days after the receipt of the notice. Moreover, even if Moses had received the right-to-sue notice well before July 25, 2011, he admitted that from September 29, 2010, to July 25, 2011, he did not experience any extraordinary circumstances that would have prevented him from filing his lawsuit against U.S. Steel. Notably, Moses has not argued in his response brief for equitable tolling. Because at least 91 days have elapsed between the date that Moses received the right-to-sue notice for Charge 2010-219 and the date that he filed his Complaint with this Court and because there is no indication of any circumstances justifying equitable tolling of the 90-day period, Moses' Complaint is untimely. On this basis, the Court grants summary judgment in favor of U.S. Steel on Moses' remaining claim arising out of Charge 2010-219.

### C. ADA Claim

Even if Moses' Complaint had been timely filed, Moses could not succeed on his ADA claim because he has admitted facts defeating the essential elements of his claim. In order to succeed on a discrimination claim under the ADA, Moses must establish that he is a "qualified individual with a disability." *Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010) (citing *Basith v. Cook Cnty.*, 241 F.3d 919, 927 (7th Cir. 2001)). A "qualified individual with a disability" is someone who "(1) satisfies the requisite skill, experience, education, and other job-related requirements of his employment position, and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id*. (citing 29 C.F.R. § 1630.2(m)). Through his admissions under Rule 36, Moses admitted that he "has no evidence, medical or otherwise, to establish that he had any physical or mental impairments prior to cashing the replacement and original payroll checks in July 2010," Def. Br., Exh. H (Request # 13), "does not have a physical or mental impairment that substantially limits a major life activity," *id*. (Request #

17), and "was not terminated due to any alleged disability," *id.* (Request # 19). Thus, Moses could not establish that he is a "qualified individual with a disability."

In addition, "[v]iolation of a workplace rule, even if it is caused by a disability, is no defense to discipline up to and including termination." *Budde*, 597 F.3d at 862 (citing *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001)). "[T]he ADA contains a specific provision stating that employers may hold alcoholics and drug users 'to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee.'" *Id.* (quoting 42 U.S.C. § 12114(c)(4)). Furthermore, the ADA explicitly states that the term "disability" shall not include "compulsive gambling." *See* 42 U.S.C. § 12211(b)(2).

In the Charges of Discrimination filed with the EEOC, Moses admitted that he misappropriated company money and that he "violated company policy while under the influence of alcohol." *See* Def. Br., Exh. C. In addition, through his admissions under Rule 36, Moses admitted that, when he received a replacement check, he signed a Replacement Check Agreement ("Agreement"), the Agreement required him not to cash the original payroll check in exchange for receiving the replacement check, and he agreed to return the original check immediately upon receipt. He further admitted that the Agreement included a notification that he would be subject to discipline, including termination, for failure to abide by the terms of the Agreement. He admitted that, after receiving a replacement payroll check, he cashed the replacement check, and that after receiving the original payroll check, he cashed the original payroll check. Moses admitted that he did not report that he received and cashed the original payroll check to anyone at U.S. Steel prior to being contacted by a representative from the U.S. Steel Payroll Department on August 12, 2010. Moses admitted that he was terminated from U.S. Steel in August 2010 for improper receipt of pay, theft, and violation of the Replacement Check Agreement and that this termination was for cause. Moses admitted that he does not know of any other employees who were not fired after violating the

Agreement. As a result of these admissions that he violated company policy, Moses would not be able to establish that he was qualified for his job. Nor could he show that other employees were held to a different standard.

Therefore, even if his Complaint had been timely filed, Moses would not be able to satisfy the requisite elements of his claim.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** United States Steel Corporation's Motion for Summary Judgment [DE 27]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant United States Steel Corporation and against Plaintiff Michael Moses.

SO ORDERED this 16th day of May, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record
       Pro se Plaintiff